**MINNESOTA BEARING COMPANY, Appellant,**

v.

**WHITE MOTOR CORPORATION, and White Farm Equipment Company, Appellee.**

**MINNESOTA BEARING COMPANY, Appellant.**

v.

**White Motor Corporation, WHITE FARM EQUIPMENT COMPANY, and Appellee.**

**Nos. 72–1070, 72–1071.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1972.

Decided Jan. 9, 1973.

Bruce F. Thompson, Minneapolis, Minn., for appellant.

Hyman Edelman, Minneapolis, Minn., for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and BOGUE, District Judge.*

STEPHENSON, Circuit Judge.

This cause is appealed from a denial of a preliminary injunction and a dismissal of an amended complaint brought by Minnesota Bearing Company, plaintiff-appellant (Minnesota Bearing) by the United States District Court for the District of Minnesota.

Two questions are presented for our determination:

(1) whether the trial court abused its discretion in denying Minnesota Bearing's motion for a preliminary injunction, and

(2) whether the trial court properly dismissed the amended compalint as to one of the defendants.

We affirm as to the first question and reverse as to the second.

The original action was commenced by Minnesota Bearing seeking damages and injunctive relief against White Motor Corporation (White Motor) as the sole defendant. The complaint alleged, *inter alia,* that White Motor unlawfully terminated Minnesota Bearing's exclusive distributorship of White "Mobilift" products.

The record discloses that for approximately ten years Minnesota Bearing had been the exclusive dealer of "Mobilift" industrial lift trucks in the upper midwest. Minnesota Bearing also serviced White products. On September 17, 1971 Minnesota Bearing was notified by White Farm Equipment Company (White Farm), a wholly owned subsidiary of White Motor, that its distributorship was to be terminated in thirty days. This action followed.

On October 20, 1971, a temporary restraining order was granted by the trial court prohibiting White Motor from refusing to supply Minnesota Bearing with Mobilift parts.

* District of South Dakota, sitting by designation.

A hearing was held to determine the appropriateness of the order. White Motor moved to quash the order for the reason that White Motor was not a proper party. Afterwards, the trial court quashed the order and dismissed the complaint against White Motor reasoning that Minnesota Bearing originally contracted with "Minneapolis-Moline" Company (now known as White Farm), and that there had not been a sufficient showing by Minnesota Bearing to enable the trial court to disregard White Farm as a corporate entity—the parent-subsidiary relationship White Motor had with White Farm notwithstanding.

Minnesota Bearing subsequently moved for leave to file an amended complaint in order to make White Farm a defendant. Additionally, it sought reconsideration of the dismissal of White Motor, and requested a preliminary injunction against White Farm. Both White Motor and White Farm objected to the motion, specifically to the continued inclusion of White Motor as a defendant.

After hearings, the trial court, in a memorandum order, granted Minnesota Bearing's motion to amend their complaint to include White Farm as a defendant, but affirmed its dismissal of the complaint against White Motor. The trial court also denied the request for preliminary injunction against White Farm upon the condition that White Farm continue to supply Minnesota Bearing with White Mobilift parts in its normal manner, at list price, with payment to be cash on delivery.

· Minnesota Bearing then moved the court for an order directing entry of final judgment and expressly to determine and certify that there was no just reason for delay. Fed.R. Civ.P. 54(b). Judgment was entered dated January 4, 1972.

## I. PRELIMINARY INJUNCTION

■ As we stated in Jones v. Snead, 431 F.2d 1115, 1116 (8th Cir. 1970), the scope of our review of an order denying a preliminary injunction is very limited. We cannot reverse unless, upon considering the trial court's order, we determine that the trial court abused its discretion. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); E. W. Bliss Company v. Struthers-Dunn, Inc., 408 F.2d 1108, 1113 (8th Cir. 1969).

■■ In order to justify the issuance of a preliminary injunction by the trial court, the movant has the burden of showing:

(1) substantial probability of success at trial by the moving party, and

(2) irreparable injury to the moving party absent such issuance.

Other factors which may be considered in the decision to grant or to deny the request are the absence of substantial harm to other interested parties, and the absence of harm to the public interest. See 3 B & H, Federal Practice and Procedure § 1433 at 490–493 (Wright Ed. 1958); accord, Winkleman v. New York Stock Exchange, 445 F.2d 786, 789 (3rd Cir. 1971).

Minnesota Bearing has alleged three claims: First, that as a distributor of forklift trucks, it is protected from cancellation of its distributorship without just cause [1] under M.S.A. § 168.27(14). Secondly, that because Minnesota Bearing was induced by White Farm to expend large amounts of money and effort to build a distributorship, the latter is estopped from terminating the distributorship on such short notice. Third, that White Farm violated § 1 of the

---

1. § 168.27(14) reads in part as follows:
   ". . . It shall be unlawful for any manufacturer or distributor of motor vehicles, or for any officer, employee, agent or representative of such manufacturer or distributor:

   *       *       *       *       *

   (3) To cancel or refuse to renew the franchise of any retail dealer or any contractual arrangement between such manufacturer or distributor and the retail dealer without just cause.

Sherman Act[2] by dictating maximum prices to be charged for Mobilift products.

■ Under their first allegation, Minnesota Bearing states that an industrial forklift truck is "obviously included" within the scope of the Minnesota Motor Vehicle Statute's definition of a "motor vehicle." M.S.A. § 168.011(4).

Whether a forklift truck is a "motor vehicle" within the meaning of this statute has not been the subject of state or federal judicial interpretation. Nor is the question clear-cut in other jurisdictions.[3] Under these circumstances, we cannot say that the trial court abused its discretion when it determined that Minnesota Bearing did not demonstrate a substantial probability of success at trial.

■ Similarly, there is no basis for finding an abuse of discretion under the theory of promissory estoppel. Minnesota Bearing suggests that Clausen & Sons, Inc. v. Theo. Hamm Brewing Co., 395 F.2d 388 (8th Cir. 1968) voices approval of their approach. We disagree. Although *Clausen* involved the termination of an exclusive distributorship contract, reversal was based upon an improper entry of summary judgment, which involves a far different scope of review than does entry or denial of a preliminary injunction. *Compare,* Melchiorre v. California Canners and Growers, 394 F.2d 413 (4th Cir. 1968), where defendant-canner was held liable for terminating a distributorship. Summary judgment in favor of defendant was reversed solely because termination occurred without notice. As the record before us indicates, notice was given in the instant cause.

■ The trial court also found that Minnesota Bearing's asserted violation of § 1 of the Sherman Act was not so evident as to demonstrate the requisite substantial probability of success at trial. Since evidence conflicted as to whether price lists used by White were for the purpose of fixing maximum or minimum resale prices, *see,* Albrecht v. Herald Co., 390 U.S. 145, 151, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); United States v. Parke, Davis & Co., 362 U.S. 29, 47, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); Kiefer-Stewart Co. v. Seagram & Sons, 340 U.S. 211, 213, 71 S.Ct. 259, 95 L.Ed. 219 (1951), or list prices for determining dealer discounts, the trial court justifiably labelled this allegation as an insufficient basis for preliminary injunctive relief.

■ Shifting our attention to the question of irreparable injury, the trial court reasoned that Minnesota Bearing would, at worst, suffer a minimum of injury. Initially, we note that White Farm has agreed to continue to deal with plaintiff on a C.O.D. basis at list price. We note further that according to the record, as of the date this action commenced, Minnesota Bearing was indebted to White Farm in excess of $100,000.00; that from April to October 1970, White Farm advised Minnesota Bearing that if its parts account were not paid in full, the account would be converted to a C.O.D. basis; and that Mr. Robert D. Weiser, president of Minnesota Bearing, testified that he would

---

2. 26 Stat. 209, 15 U.S.C. § 1.

3. *Compare,* Davis v. Pine Mountain Lumber Company, 273 Cal.App.2d 218, 77 Cal. Rptr. 825 (1969), (using highway for purpose of moving fork-lift truck between job sites was incidental to its primary purpose, and therefore was not subject to "motor vehicle" registration) with, Travelers Idem. Co. v. Colonial Ins. Co., 242 C.A.2d 227, 51 Cal.Rptr. 724 (1963), (exemption of fork-lift truck from "motor vehicle" registration did not make it any less a "motor vehicle") and, D'Angelo v. Cornell Paperboard Products Co., 33 Wis. 2d 218, 147 N.W.2d 321 (1967) (fork-lift truck not a "motor vehicle" for purposes of direct action statute). *See also,* The National Traffic & Motor Vehicles Safety Act, 15 U.S.C. § 1391(3) where "motor vehicle" is defined as " . . . any vehicle driven or drawn by mechanical power *manufactured primarily for use on the public streets, roads, and highways,* except any vehicle operated exclusively on a rail or rails." (Emphasis supplied.)

be able to pay cash for parts because the account would not likely be in excess of $7,000.00 per month.

The trial court found that under the C.O.D. arrangement Minnesota Bearing would be able to protect its good will by continuing to service Mobilift products, and would not be foreclosed from making a profit since retail prices varied from ten to thirty per cent over list price for parts. When balanced against the opposition White Farm would be likely to face from its new exclusive dealer of Mobilift products in the marketing area in issue if White Farm were to supply a competitor on a discounted basis, we have no conceptual difficulty with the trial court's rationale. We hold, therefore, that the trial court did not abuse its discretion by failing to find the requisite threat of irreparable injury to Minnesota Bearing.

The decision of the trial court denying Minnesota Bearing's request for preliminary injunction is affirmed.

## II.  DISMISSAL OF WHITE MOTOR

The trial court found that the original complaint by Minnesota Bearing failed to show any contact between White Motor and White Farm, unless the corporate identity of the latter was to be completely ignored. Although it found that the amended complaint alleged the approval of termination by the general counsel for White Motor, the trial court determined that this fact alone could not serve as a basis upon which relief could be granted.

■ In dismissing the amended complaint, matters outside the pleadings were presented to and not excluded by the trial court. Dismissal of the action, therefore, necessarily constitutes disposition of this cause by the trial court as summary judgment under Trial Rule 56. Fed.R.Civ.Proc. 12(b).  Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); Abramson v. Mitchell, 459 F.2d 955, 957 (8th Cir. 1972). Because of the extreme nature of the entry thereof, the right to judg-

ment must be shown "with such clarity as to leave no room for controversy, and . . . that . . . [Minnesota Bearing] would not be entitled to recover under any discernible circumstances." Cervantes v. Time, Inc., 464 F.2d 986, 993 (8th Cir. 1972); Traylor v. Black, Sivalls & Bryson, Inc., 189 F. 2d 213, 216 (8th Cir. 1951).

■ In their amended complaint Minnesota Bearing alleged that in contravention of § 1 of the Sherman Act, White Farm, at the direction of White Motor, specified maximum resale prices of "Mobilift" products in an amount lower than could profitably be charged. Further, it alleged that White Farm and White Motor entered into a contract or conspired with one Walter H. White, a substantial stockholder of White Motor and grandson of the founder of that company, pursuant to which White Farm cancelled Minnesota Bearing's dealership and awarded it to Walter H. White, ostensibly as a restraint upon trade.

§ 1 provides as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States or with foreign nations is declared to be illegal."

Both White Motor and White Farm urge that under the facts of the instant case, a combination between parent and subsidiary cannot be held to be violative of the Sherman Act. That is, discussions between parent and subsidiary, allegedly wholly internal in nature, which lead to the express approval by the parent of a decision to disenfranchise a distributor cannot be labelled a "conspiracy" or "combination" as contemplated by the Act. We do not quarrel with that statement, but such is not our situation. The parent's role here bears upon the significance of two allegations, which, if proven, violate § 1 of the Act: First, whether White Motor conspired with White Farm to fix resale prices, and secondly, whether they conspired to terminate Minnesota Bearing's distributorship. Under such circumstances it is

clear that common ownership does not serve to exonerate corporate entities, operating as parent and subsidiary, of the legal obligations imposed upon individual corporations. Perma Life Mufflers v. Int'l. Parts Corp., 392 U.S. 134, 141–142, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); T. V. Signal Co. of Aberdeen v. American Telephone & T. Co., 462 F.2d 1256, 1260 (8th Cir. 1972).[4] The question thus raised is whether a conspiracy as proscribed by § 1 did, in fact, exist.

■■ In determining the propriety of the entry or denial of summary judgment, the trial court cannot try issues of fact— it only determines whether or not there are issues of fact to be tried. 3 B & H, Federal Practice and Procedure § 1231 at 101 (Wright Ed. 1958). As we previously noted, the trial court found that the evidence before it conflicted as to whether the price lists before the court were for the purpose of fixing resale prices or were list prices for determining dealer discounts. This finding alone constitutes a sufficient basis for reversal. However, we also emphasize that an equally sufficient basis for concluding that summary judgment was improperly entered obtains by reason of the trial court's failure to address itself in its order to the common ownership aspect of the alleged § 1 conspiracy. See Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972).[5]

Accordingly, the decision of the trial court is reversed as to this issue and the cause is remanded for further proceedings not inconsistent herewith.

4. Based upon *Perma Life* and *T. V. Signal*, this complaint would not be subject to dismissal under Trial Rule 12(B). Under the watershed decision of Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), Minnesota Bearing has not precluded itself from recovery on the face of its complaint by pleading an "insuperable bar to relief" in light of its allegation of a § 1 conspiracy. *See*, Lewis v. Chrysler Motors Corp., 456 F.2d 605 (8th Cir. 1972).

5. *Compare*, Ark. Dental Supply Co. v. Cavitron Corp., 461 F.2d 1093 (3rd Cir. 1972), and Bushie v. Stenocord Corp., 460 F.2d 116 (9th Cir. 1972). Summary judgment in favor of defendants was affirmed in each case. Although each claim asserted § 1 violations, neither case involved, as here, the question of maximum resale price fixing.