**Thomas SAXE, Plaintiff,**

v.

**James B. BRENNAN et al., Defendants.**

**No. 76–C–137.**

United States District Court,
E. D. Wisconsin.

June 14, 1976.

Hagen & Kafkas by Earl A. Hagen, Milwaukee, Wis., for plaintiff.

James B. Brennan, City Atty., by Beverly A. Temple, Asst. City Atty., Milwaukee, Wis., for James B. Brennan.

Walsh & Simon by Michael A. Campbell, Milwaukee, Wis., for Wis. Civil Liberties.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff seeks declaratory and injunctive relief from the enforcement by the defendants, the city attorney and the chief of police of the city of Milwaukee, of Section 106–14 of the Milwaukee Code of Ordinances. The plaintiff's motion for a temporary restraining order was denied after a hearing in which counsel for the plaintiff and the defendants participated. The plaintiff's motion for a preliminary injunction has been fully briefed. I believe that the plaintiff's motion should be granted.

## FACTUAL BACKGROUND

The uncontested affidavit of the plaintiff states that at his studio, for a fee, the plaintiff "provides his patrons with art instruction and with painting and/or sketching materials including easels, sketch pads, paint, pencils, crayons, etc., and in addition thereto his studio also provides live models of both sexes who pose for said patrons in accordance with their requirements, including posing nude and semi-nude."

On February 3, 1976, the common council of the city of Milwaukee enacted Section 106–14 of the Milwaukee Code of Ordinances, which reads:

"106–14. Body Studios

(1) DEFINITION. A 'Body Studio' as used in this section is any premises other than a massage establishment as defined in Section 106–13 of the Milwaukee Code and licensed as such or any class operated within and under the control of an accredited school or university licensed by the State of Wisconsin which is advertised or represented as a 'body painting studio,' 'model studio,' 'sketching studio,' 'counseling studio,' 'sensitivity awareness studio' or any other expression or characterization which conveys the same or similar meaning and which leads to the reasonable belief that there will be furnished on such premises for a fee or charge the opportunity to paint, sketch, draw, photograph, massage, feel, handle or touch the unclothed body or an unclothed portion of the body of another person, or to be so painted, sketched, drawn, photographed, massaged, felt, handled or touched; or to observe, view, draw, sketch, paint or photograph any such activity; or to cofer [sic] with, listen to, or give advice to any person not fully clothed, or to be not fully clothed while conferring with, listening to, or giving advice to another person. As used in this sub-section, 'unclothed portion of the body' and 'not fully clothed' shall be defined as nudity as defined in Section 106–7(1)(c) of the Milwaukee Code.

(2) PROHIBITED. It is unlawful for any person within the limits of the City of Milwaukee to operate, conduct or maintain a body studio or to knowingly be employed at such establishment.

(3) PENALTY. Every person violating any of the provisions of this section shall be punished upon conviction thereof by a fine of not less than $150 nor more than $500 or upon default of payment thereof shall be imprisoned in the House of Correction or County Jail of Milwaukee County for not less than 10 days nor more than 60 days.

Part 3. All ordinances or parts of ordinances contravening the provisions of this ordinance are hereby repealed.

Part 4. This ordinance shall take effect and be in force from and after its passage and publication."

An opinion from the city attorney of Milwaukee dated October 13, 1975, was submitted to the chairman of the utilities and licenses committee of the Milwaukee common council with a draft of a virtually identical ordinance. Such opinion states in part:

"If the city of Milwaukee enacts this ordinance, it will be doing so under its

statutory police power. However, recent federal court and United States Supreme Court decisions dealing with similar subject matter, i. e., topless dancing, have made the fate of this ordinance questionable at best. While our office would enforce the ordinance and defend it as to any constitutional attack, we would be unable to stamp it legal and enforceable pursuant to Section 1–3 of the Milwaukee Code of Ordinances."

When this ordinance became effective, the plaintiff closed his studio, which has remained closed pending this action. The uncontested affidavit of the plaintiff states that:

"[I]n addition to the loss of substantial revenue, all of affiant's expenses continue to run, including certain salaries, utilities and the rental of his premises; that affiant does not have the financial resources to continue to meet said expenses for any extended period of time; that most of affiant's models and instructors work on a commission basis; that they cannot wait indefinitely for affiant to re-open his art studio, and therefore will be required to seek employment elsewhere; that affiant's art studio business is highly dependent upon these employees and, should they seek employment elsewhere, they would be virtually impossible to replace."

### LEGAL ANALYSIS

The plaintiff's complaint challenges the facial validity of Section 106–14 on the basis that it is an overly broad restriction on free expression and a deprivation of due process, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

The Supreme Court recently stated the standards for granting a preliminary injunction in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975) as follows:

"The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable in-

jury and also that he is likely to prevail on the merits. It is recognized, however, that a District Court must weigh carefully the interests on both sides. Although only temporary, the injunction does prohibit state and local enforcement activities against the federal plaintiff pending final resolution of his case in the federal court."

■ I find that the plaintiff has shown the requisite irreparable injury for preliminary injunctive relief. The defendants suggest that the harm suffered by the plaintiff is the result of his "voluntary" cessation of business, not of any prosecution by them. However, the substantial business losses and possible destruction of the plaintiff's enterprise resulting from his compliance with the ordinance is precisely the type of injury found sufficient in *Doran,* supra, at page 932, 95 S.Ct. 2561. Indeed, the plaintiff here is faced with a substantially greater degree of harm than were the plaintiffs in *Doran*—they needed only to modify slightly the operation of their bars, while this plaintiff is faced with an ordinance which totally prohibits his business.

I also believe that the plaintiff is likely to prevail on the merits of his First Amendment claim. He challenges Section 106–14 as applied to his business activities and as facially overbroad. With respect to First Amendment challenges for overbreadth, the Supreme Court stated in *Bigelow v. Virginia,* 421 U.S. 809, 815–816, 95 S.Ct. 2222, 2229, 44 L.Ed.2d 600 (1975):

"This Court often has recognized that a defendant's standing to challenge a statute on First Amendment grounds as facially overbroad does not depend upon whether his own activity is shown to be constitutionally privileged. The Court consistently · has permitted 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' "

Accordingly, the plaintiff brings before this court the rights of all those who might be caught up in the broad sweep of Section

106–14. On its face, the ordinance prohibits the operation of and any employment in a "body studio," that is any establishment advertised or represented as presenting an opportunity, among other things, to paint, draw, photograph, feel or touch an unclothed portion of the body of another person or to be so painted, drawn, photographed, felt, or touched; to observe, view, draw, sketch, paint or photograph any such activity or to confer with, listen to, or give advice to any person not fully clothed, or to be not fully clothed while conferring with, listening to, or giving advice to another person. The prohibition of the ordinance is not dependent on any actual conduct of the operator or employees of the business establishment, other than that of advertising or representing the establishment in a manner which conveys "a reasonable belief" that an opportunity to engage in the described activities will be provided. The described activities are not limited in any way to those involving obscenity; indeed, mere nudity in conjunction with activities such as painting, listening, giving advice, or conferring falls within the scope of the activities described in the ordinance.

In *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 213, 95 S.Ct. 2268, 2274, 45 L.Ed.2d 125 (1975), the Supreme Court struck down an ordinance prohibiting the exhibition by outdoor theaters of films containing nudity and stated:

> "The ordinance is not directed against sexually explicit nudity, nor is it otherwise limited. . . . *Clearly all nudity cannot be deemed obscene even as to minors."* (Emphasis added)

The plaintiff's challenge to the instant ordinance is also supported by *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975), in which the granting of a preliminary injunction against the enforcement of an ordinance prohibiting topless dancing was upheld. The court stated:

> "Although the customary 'bar room' type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California v. La-*

*Rue,* 409 U.S. 109, 118 [93 S.Ct. 390, 397, 34 L.Ed.2d 342] (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances. In *LaRue,* however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-First Amendment, outweighed any First Amendment interest in nude dancing and that a state could therefore ban such dancing as a part of its liquor license program.

> "In the present case, the challenged ordinance applies not merely to places which serve liquor, but to many other establishments as well. The District Court observed, we believe correctly:

> > ' . . . It could include the theater, town hall, opera house, as well as a public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the "Ballet Africains" and a number of other works of unquestionable artistic and socially redeeming significance.' "

The failure of the challenged ordinance in the case at bar to limit its sweep to activities which are obscene or otherwise unprotected by the First Amendment and to provide a mechanism for determining the obscenity or nonobscenity of specific activities is particularly important in view of the Supreme Court's decision in *McKinney v. Alabama,* 424 U.S. 669, 96 S.Ct. 1189, 47 L.Ed.2d 387, 44 L.W. 4330 (1976), invalidating a conviction for selling obscene material where the defendant was precluded from raising the alleged nonobscenity of the materials as a defense. Section 106–14 does not even refer to obscenity as a criterion for limiting its prohibition on expressive activities, much less provide a defendant with an opportunity to litigate the issue.

Since I believe that the plaintiff has shown the requisite irreparable harm and likelihood of success on the merits, I must also consider "the interests on both sides." The defendants argue in their brief that:

"Were the preliminary injunction to issue in the instant case, the defendant, City of Milwaukee, would be virtually without any regulation of 'body studios' or similar and/or associated establishments. The resulting injury to the public that would occur in the absence of any regulation far outweighs any injury the plaintiff might suffer without the granting of the preliminary injunction."

The defendants have not discussed the nature of the injury to the public which would result from the granting of a preliminary injunction, although I note that the preamble to Section 106–14 indicates that a number of employees of massage parlors and art studios were convicted of sex-related offenses prior to its adoption. There is no suggestion on the record before me that existing legislation is unavailable to deal with any specific sex offenses which might occur. The prohibition of Section 106–14 goes far beyond explicit sexual misconduct, and accordingly, I find the following passage from *Doran*, 422 U.S. at pages 933–34, 95 S.Ct. at page 2569, applicable to the balancing process which the court is emburdened to consider:

"Even if we may assume that the State of New York has delegated its authority under the Twenty-First Amendment to towns such as North Hempstead, and that the ordinance would therefore be constitutionally valid under *LaRue, supra,* if limited to places dispensing alcoholic beverages, the ordinance in this case is not so limited. Nor does petitioner raise any other legitimate state interest that would counterbalance the constitutional protection presumptively afforded to activities which are plainly within the reach of Local Law 1–1973."

Accordingly, I believe that the plaintiff's motion for a preliminary injunction should be granted.

CONCLUSION

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is granted.

IT IS ALSO ORDERED that the defendants in this action be and hereby are enjoined and restrained, until further order of this court, from the further enforcement of Section 106–14 of the Milwaukee Code of Ordinances against the plaintiff Thomas Saxe.