558 F.2d 861
 PLANNED PARENTHOOD OF MINNESOTA, INC., Appellee,
v.
CITIZENS FOR COMMUNITY ACTION et al., Appellants.
PLANNED PARENTHOOD OF MINNESOTA, INC., Appellee,
v.
Rosalie BUTLER et al., Appellants.
PLANNED PARENTHOOD OF MINNESOTA, INC., Appellee,
v.
Patrick J. ROEDLER, Appellant.
 Nos. 76-1761, 76-1762 and 76-1855.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1977.
Decided June 10, 1977.
 
 Pierre N. Regnier, St. Paul, Minn., for appellants, Citizens for Community Action.
 D. D. Wozniak, St. Paul, Minn., for appellants, Butler, Levine and Tedesco.
 Patrick H. O'Neill, St. Paul, Minn., for appellant, Patrick J. Roedler.
 Harriet Lansing, St. Paul, Minn., for City of St. Paul, etc.
 Franz P. Jevne, III, Minneapolis, Minn., for appellee, Planned Parenthood of Minnesota.
 Before GIBSON, Chief Judge, and WEBSTER and HENLEY, Circuit Judges.
 GIBSON, Chief Judge.
 
 
 1
 The plaintiff, Planned Parenthood of Minnesota, Inc. (Planned Parenthood), has operated a comprehensive family planning clinic in St. Paul, Minnesota, since 1932.[1] In January 1976, it decided to offer first trimester abortion services to its patients in conjunction with its other activities. To accommodate its expanded activities Planned Parenthood in March of 1976 finalized its plan to purchase a building at 1965 Ford Parkway in St. Paul to house its administrative offices, training facilities, research center and a medical clinic for furnishing family planning services including first trimester abortions. The prospective establishment of the abortion clinic met a hostile reception from a number of the residents of the area involved. In response to public protests, the St. Paul City Council temporarily frustrated the construction and operation of the abortion clinic by enacting an ordinance which imposed a six-month moratorium on the construction of "separate abortion facilities and other like facilities within the City of St. Paul" pending a study to determine whether special zoning restrictions should be imposed on such facilities. Planned Parenthood filed the present action challenging the constitutionality of the ordinance and seeking injunctive and monetary relief. The District Court, perceiving serious questions as to the constitutionality of the City Council's action, issued a preliminary injunction against the enforcement of the ordinance. On this appeal, we determine only whether or not the trial judge abused his discretion in granting the preliminary injunction and also review the propriety of his disposition of certain pretrial motions.
 
 
 2
 * Planned Parenthood's Ford Parkway medical clinic, which will offer first trimester abortion services, is situated in an area zoned B-3. This zoning classification permits the construction and operation of medical offices, clinics and laboratories. The record indicates that there are doctor's offices and medical clinics within a few blocks of Planned Parenthood's Ford Parkway medical clinic. No one seriously disputes that Planned Parenthood's medical clinic is the type of facility that can be maintained in an area zoned B-3.
 
 
 3
 After the purchase of the building on Ford Parkway, the St. Paul City Council, actuated in part by clamorous public opposition to the construction of the abortion facility, entertained a resolution which proposed a six-month moratorium on the construction of separate abortion facilities in St. Paul. Public hearings on this resolution were conducted during the ensuing three weeks. The City Council, after securing the legal advice of the City Attorney, adopted the following ordinance by a 5 to 2 vote on June 8, 1976:
 
 
 4
 (A) moratorium is hereby placed on the construction, reconstruction, adaption and modification of separate abortion facilities and other like facilities within the City of Saint Paul, and a moratorium on the issuance of permits for same; and * * * this moratorium shall be in effect for a period of six months from the effective date of this resolution (June 12, 1976);
 
 
 5
 (T)he Planning Commission is hereby directed to conduct a study of the effects of such facilities on the integrity of existing land use controls within the City, including proposed amendments to existing ordinances, the relationship of such facilities to the comprehensive plan, and any additional considerations the Planning Commission deems appropriate, and make recommendations thereon to the City Council within five months of the effective date of this resolution * * *.
 
 
 6
 "Separate abortion service facility" was defined as "any facility in which any abortion is performed, but which is not a hospital * * *."
 
 
 7
 After passage of the ordinance, Planned Parenthood requested a building permit for its proposed Ford Parkway facility. The request was denied by the issuing authority, the City Architect, who stated that he could not issue a building permit for a separate abortion service facility until the moratorium expired.
 
 
 8
 Planned Parenthood instituted the present action against the City of St. Paul, all City Council members and the Mayor, City Attorney, City Architect and Supervisor of Inspectors of St. Paul.[2] Planned Parenthood sought a declaratory judgment that the moratorium ordinance was unconstitutional and an injunction against its enforcement. The complaint also requested $25,000 compensatory damages, $20,000 punitive damages and attorney's fees from the Mayor of St. Paul and the five council members voting in favor of the ordinance.
 
 
 9
 Soon after the complaint was filed, a motion to intervene was filed by the Citizens for Community Action, a neighborhood association expressing an interest in preserving property values and assuring that abortion facilities do not adversely affect the health, welfare and safety of citizens in St. Paul. Joining in the motion to intervene were two couples residing in the vicinity of the proposed clinic.
 
 
 10
 In a pretrial memorandum opinion, the District Court ruled on the motion to intervene and the request for a preliminary injunction. The court overruled the motion to intervene, concluding that the applicants for intervention had failed to establish their right to intervene under Fed.R.Civ.P. 24(a)(2). The applicants were also denied permissive intervention under Fed.R.Civ.P. 24(b). In regard to the request for a preliminary injunction, the trial judge stated that Planned Parenthood demonstrated a likelihood that it would prevail on the merits of its claims against defendants. The court found that Planned Parenthood would in all probability establish that the ordinance impinged upon the constitutional rights of women to obtain first trimester abortions and was unsupported by compelling governmental interests. Also, the court observed that Planned Parenthood would probably prove that the ordinance was discriminatory and adopted in bad faith and thus contravened state zoning law. Therefore, as Planned Parenthood had proved that implementation of the ordinance would irreparably injure its operations, the preliminary injunction was issued.[3]
 
 II
 
 11
 On this appeal, we are confronted with the threshold question of mootness. The assailed ordinance expired by its own terms on December 12, 1976. The preliminary injunction against the enforcement of the ordinance has no present effect since there is nothing against which it can operate. Planned Parenthood has received a building permit to construct its abortion clinic on Ford Parkway and is in the process of renovating its building for that purpose. At first blush, these factors would seem to compel a finding of mootness on this appeal. However, other factors are present which militate against this finding.
 
 
 12
 In its present form, this case is at a very preliminary stage. The spirited dispute between the parties did not expire with the moratorium ordinance. Remaining unresolved are the issues of permanent injunctive relief and damages, which await disposition of this appeal and further proceedings in the trial court. Therefore, a decision by us on the District Court's action would not be nugatory or merely advisory. The District Court has expressed its views on the merits of this case and, if we affirm the grant of preliminary injunctive relief, our disposition will bear directly on the District Court's resolution of the remaining contested issues. If we reverse the court's granting of injunctive relief, defendants have intimated that they will consider other zoning legislation that may restrict Planned Parenthood's abortion operations at the Ford Parkway site. Therefore, our decision "will have a concrete effect upon the rights of the parties." Mahavongsanan v. Hall, 529 F.2d 448, 449 (5th Cir. 1976). We conclude that this appeal is not moot. Hedberg v. State Farm Mutual Automobile Insurance Co., 350 F.2d 924 (8th Cir. 1965).[4]III
 
 
 13
 Defendants argue that the District Court's issuance of the preliminary injunction was legally unsupportable. In order to secure a preliminary injunction, Planned Parenthood must prove that (1) there is a substantial probability that it will succeed at trial on the merits of its claims and (2) it will suffer irreparable injury if injunctive relief is not forthcoming. Minnesota Bearing Co. v. White Motor Corp., 470 F.2d 1323, 1326 (8th Cir. 1973); see Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1974). In determining whether or not preliminary injunctive relief is necessary and appropriate, the District Court must carefully balance the interests of the litigants and the public, Doran v. Salem Inn, Inc., supra at 931, 95 S.Ct. 2561; Inland Steel Co. v. United States, 306 U.S. 153, 157, 59 S.Ct. 415, 83 L.Ed. 557 (1939), and consider the extent to which these respective interests will be injured by the grant or denial of injunctive relief. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Inland Steel Co. v. United States, supra, 306 U.S. at 157, 59 S.Ct. 415; Minnesota Bearing Co. v. White Motor Corp., supra at 1326. We accord the district court considerable discretion in weighing the equities of the case and determining whether or not a preliminary injunction should issue. American Train Dispatchers Association v. Burlington Northern, Inc., 551 F.2d 749 at 751 (8th Cir. 1977). On appeal of an order granting preliminary injunctive relief, the scope of our review is very limited. See Minnesota Bearing Co. v. White Motor Corp., supra at 1326.
 
 
 14
 (W)hile the standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunctive is stringent, the standard of appellate review is simply whether the issuance of the injunction, in the light of the applicable standard, constituted an abuse of discretion.
 
 
 15
 Doran v. Salem Inn, Inc., supra, 422 U.S. at 931-32, 95 S.Ct. at 2568.
 
 
 16
 We conclude that the District Court did not abuse its discretion in issuing the preliminary injunction.
 
 
 17
 a. Irreparable injury.
 
 
 18
 The District Court properly concluded that Planned Parenthood would be irreparably injured if a preliminary injunction were not issued. Planned Parenthood purchased the land and buildings for the Ford Parkway facility for $200,000 and financed the entire amount. Simultaneous with the purchase, Planned Parenthood arranged to transfer its operations from its previous facility to the Ford Parkway facility on September 30, 1976. At the time of the purchase, Planned Parenthood relied on the zoning classification of the Ford Parkway site and expected to generate a substantial amount of income by offering its unique abortion services[5] to its patients. A portion of this income would be used to discharge the debt incurred by Planned Parenthood in the purchase of the Ford Parkway facility.
 
 
 19
 Before Planned Parenthood could implement its decision to transfer its operations, the St. Paul City Council enacted the moratorium ordinance which forestalled the creation of the abortion clinic and deprived Planned Parenthood of the abortion business and its corresponding income. The adverse effect on Planned Parenthood's business, coupled with the incalculable loss of revenue, provides a basis for finding irreparable injury. See Doran v. Salem Inn, Inc., supra at 932, 95 S.Ct. 2561; New York Pathological and X-Ray Laboratories, Inc. v. Immigration and Naturalization Service, 523 F.2d 79, 81-82 (2d Cir. 1975); Saxe v. Brennan, 416 F.Supp. 892, 894 (E.D.Wis.) aff'd without opinion, 544 F.2d 521 (7th Cir. 1976). Also, Planned Parenthood's showing that the ordinance interfered with the exercise of its constitutional rights and the rights of its patients supports a finding of irreparable injury. Henry v. Greenville Airport Commission, 284 F.2d 631 (4th Cir. 1960); see 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948, at 440 (1973), and cases cited therein. Finally, Planned Parenthood's good will was imperiled by the prospect of having to interrupt its services if not allowed to transfer to the Ford Parkway facility or to renew its cancelled lease at its previous facility. See Minnesota Bearing Co. v. White Motor Corp., supra at 1328; 11 C. Wright & A. Miller, Federal Practice and Procedure, supra § 2948, at 439.
 
 
 20
 The equities in this case tip decidedly in Planned Parenthood's favor. The City Council, which had not previously attempted to restrict abortion operations or the construction of medical clinics in the Ford Parkway area, enacted an ordinance aimed primarily at Planned Parenthood and its nascent abortion facility. As the District Court found, the adoption of the ordinance was discriminatorily motivated. Balancing the private and public interests in this case, we conclude that all of the factors discussed above coalesce to support a finding of irreparable injury to Planned Parenthood.
 
 
 21
 b. Probability of Success on the Merits.
 
 
 22
 The District Court viewed the ordinance in question as an abridgment of the constitutional rights of pregnant women to secure abortions under the principles of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). According to the court, Planned Parenthood showed a substantial probability that it would also prevail on its claim that the ordinance was discriminatory and not promulgated in good faith and thus violated Minnesota zoning law. See Almquist v. Town of Marshan, Minn., 245 N.W.2d 819 (1976).
 
 
 23
 We advance from the premise that Planned Parenthood's abortion clinic is to perform only first trimester abortions. Therefore, by denying to pregnant women the opportunity to use Planned Parenthood's unique abortion facility, the ordinance interfered with the pregnant woman's right to secure and Planned Parenthood's ability to provide first trimester abortion services in the St. Paul area.[6] The Supreme Court has ruled that the state's power to regulate the abortion process for the protection of maternal health exists only during the second trimester of pregnancy.
 
 
 24
 With respect to the State's important and legitimate interest in the health of the mother, the "compelling" point, in the light of present medical knowledge, is at approximately the end of the first trimester. This is so because of the now-established medical fact * * * that until the end of the first trimester mortality in abortion may be less than mortality in normal childbirth. It follows that, from and after this point, a State may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health. Examples of permissible state regulation in this area are requirements as to the qualifications of the person who is perform the abortion; as to the licensure of that person; as to the facility in which the procedure is to be performed, that is, whether it must be a hospital or may be a clinic or some other place of less-than-hospital status; as to the licensing of the facility; and the like.
 
 
 25
 Roe v. Wade, supra, 410 U.S. at 163, 93 S.Ct. at 731.
 
 
 26
 Despite this sweeping pronouncement, the Supreme Court has granted the states limited authority to regulate the first trimester abortion procedure when necessary to assure that an abortion at that stage is "as safe for the woman as normal childbirth at term * * * ." Connecticut v. Menillo, 423 U.S. 9, 11, 96 S.Ct. 170, 171, 46 L.Ed.2d 152 (1975) (allowing states to proscribe first trimester abortions by nonphysicians); see Hodgson v. Lawson, 542 F.2d 1350, 1357-58 (8th Cir. 1976).
 
 
 27
 Applying these standards to the present case, it appears probable that Planned Parenthood will prevail on its claim that the ordinance is invalid.
 
 
 28
 First, defendants' argument that they are constitutionally entitled to control the construction and operation of first trimester abortion facilities has been undermined by recent case law. In Arnold v. Sendak, 416 F.Supp. 22 (S.D.Ind.1976), a three-judge district court invalidated an Indiana statute requiring all abortions to be performed "in a hospital or a licensed health facility * * * which offers the basic safeguards as provided by a hospital admission, and has immediate hospital backup * * * ." The court ruled that this statute, by attempting to regulate where first trimester abortions can be performed, runs afoul of Roe v. Wade, supra, and Doe v. Bolton, supra. This ruling was summarily affirmed by the Supreme Court. Sendak v. Arnold, 968 U.S. 429, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976). This summary affirmance, which constitutes a disposition on the merits of the case, see Hicks v. Miranda, 422 U.S. 332, 344-45, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), supports Planned Parenthood's argument that municipalities can not impose moratoriums and special locational requirements on the construction of first trimester abortion clinics.[7]
 
 
 29
 Second, the attempt by defendants to seek refuge from these constitutional challenges by relying on the City's broad zoning authority is unavailing. There is no judicial authority allowing a municipality, by imposing special restrictive zoning requirements on first trimester abortion clinics, to do indirectly that which it can not do directly by medical regulation. In any event, the District Court made a supportable finding that the "zoning" ordinance in this case is only a disguised attempt to regulate medical practices in St. Paul. If established at trial, this fact would compel the conclusion that the City Council was acting ultra vires and the ordinance would be null and void.
 
 
 30
 Finally, the District Court found that the ordinance was discriminatory and enacted in bad faith. On the basis of the present record, this finding is not clearly erroneous. Proof of discrimination and bad faith may constitute not only a violation of Planned Parenthood's constitutional rights, see Burns v. City of Des Peres, 534 F.2d 103, 108 (8th Cir.) cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976), but also an impermissible exercise of zoning power under Minnesota law, Almquist v. Town of Marshan, supra.
 
 
 31
 We conclude that Planned Parenthood has proved the requisite irreparable injury and a substantial probability of success on the merits. It was not an abuse of discretion for the District Court to issue a preliminary injunction against the enforcement of the ordinance.IV
 
 
 32
 An application for intervention was filed by the Citizens for Community Action, a neighborhood association comprised of St. Paul citizens, taxpayers and homeowners. The professed purpose of the association is to preserve property values and insure that abortion facilities do not affect the health, welfare and safety of citizens. The application for intervention was joined by two couples, Donald and Mary Ann Lennon and Norman and Kathleen Vernig, who own property in the vicinity of the proposed Ford Parkway abortion facility. The Lennons and Vernigs wish to intervene to assure that their property values are not adversely affected by the creation of an abortion clinic in their neighborhood. The District Court refused to allow the applicants to intervene as of right under Fed.R.Civ.P. 24(a)(2) or to intervene permissibly under Fed.R.Civ.P. 24(b).
 
 
 33
 Upon filing a timely application for intervention as of right under Rule 24(a) (2),[8] the applicant is entitled to intervene if he satisfies the following tripartite test:
 
 
 34
 1) That he has (a) recognized interest in the subject matter of the primary litigation, 2) That his interest might be impaired by the disposition of the suit, and 3) That his interest is not adequately protected by the existing parties.
 
 
 35
 Edmondson v. Nebraska, 383 F.2d 123, 126 (8th Cir. 1967).
 
 
 36
 In regard to the first requirement, the interest identified must be more than peripheral or insubstantial; the applicant must assert a "significantly protectable interest." Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Here, the St. Paul City Council has enacted an ordinance imposing a moratorium on the construction of abortion clinics pending a study to determine whether all abortion clinics should be subjected to special zoning requirements. The applicants for intervention are vigorously defending this ordinance, arguing that such a measure is necessary to preserve their property values.[9] "Interests in property are the most elementary type of right that Rule 24(a) is designed to protect." Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1124 (5th Cir. 1970). This litigation, which will establish the validity or invalidity of the ordinance, necessarily bears directly on the property interests the applicants seek to preserve. We conclude that the applicants have a significantly protectable interest in the subject matter of this litigation.
 
 
 37
 As required by Rule 24(a)(2), the applicants' ability to protect their interest may be impaired or impeded by the disposition of this case. If defendants remain enjoined from enforcing the ordinance, Planned Parenthood can lawfully establish an abortion facility at the Ford Parkway site. A judicial declaration that municipalities can not impose moratoriums on the construction of abortion clinics or, in a broader context, can not subject first trimester abortion clinics to special zoning requirements would have an inhibitive effect on the assertion of applicants' claims. In order to prevent what they view as an incipient erosion of their property values, the applicants must participate in this litigation, and be given the opportunity to present their views to the court in their endeavor to uphold the ordinance as a legitimate and constitutional exercise of municipal power. See Atlantis Development Corp. v. United States, 379 F.2d 818, 828-29 (5th Cir. 1967).
 
 
 38
 Finally, in order to intervene under Rule 24(a)(2), the applicants must carry the "minimal" burden of showing that their interests are not adequately protected by the existing parties. Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); see Edmondson v. Nebraska, supra at 127. The District Court concluded that the applicants are adequately represented by defendants, with whom they seek to align themselves. We disagree.
 
 
 39
 Concededly, both the applicants and defendants are interested in upholding the constitutionality of the ordinance. However, their respective interests, while not adverse, are disparate. Defendants are accused of invidiously discriminating against Planned Parenthood in particular and abortion clinics in general. Allegations of bad faith have been directed against the defendants. Many of the defendants are seeking to avoid personal liability for allegedly infringing upon Planned Parenthood's constitutional rights. At trial, defendants will argue that the adoption of the ordinance was neither arbitrary nor discriminatory. They will seek to prove that the ordinance is consistent with the City's developing comprehensive zoning plan and existing principles of land use regulation.
 
 
 40
 The applicants, however, are concerned only with their own property values; they are exposed to no risk of personal liability and are defending no charges of discrimination or bad faith. As stated in Joseph Skillken and Co. v. City of Toledo, 528 F.2d 867, 876 (6th Cir. 1975), vacated on other grounds, 492 U.S. 1068, 97 S.Ct. 800, 50 L.Ed.2d 786 (1977):
 
 
 41
 The municipal defendants had enough to do to defend themselves against the charges leveled against them by the plaintiffs. They do not have the same interest in protecting the values of the homeowners' properties as do the homeowners themselves.
 
 
 42
 In the present case, the City Council is divided on the issue of whether the moratorium ordinance is proper or advisable. The ordinance was passed by a 5 to 2 vote; thus, a switch of two votes could completely change the attitude of the City Council and the municipality in regard to the issues presented in this litigation. The protection of the interests of the individual property owners rests primarily in the hands of a few individual council members, most of whom are threatened with personal liability for their discrete actions in voting favorably on the challenged ordinance. The record shows that the defendants have presented little evidence to show how the operation of an abortion clinic would affect applicants' important property interests.
 
 
 43
 We, therefore, conclude that the applicants to intervene have presented sufficient evidence to show that defendants are not adequate representatives of the applicants' interests.
 
 
 44
 Based on the foregoing discussion, the District Court erred in refusing to allow the applicants to intervene under Rule 24(a)(2).
 
 V
 
 45
 Planned Parenthood seeks an award for its attorney's fees incurred in the prosecution of this appeal. The Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. No. 94-559, 90 Stat. 2641, invests the court with discretionary authority to award attorney's fees to the prevailing party in civil rights actions such as this. The act became effective while this case was pending resolution on appeal and, therefore, provides a statutory basis for an attorney's fees award to the prevailing party. Finney v. Hutto, 548 F.2d 740, 742 (8th Cir. 1977). However, the courts have wide discretion in determining whether or not an award of attorney's fees is warranted, giving due consideration to the principle that the prevailing party should recover attorney's fees "unless special circumstances would render such an award unjust." Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); S.Rep. No. 94-1011, 94th Cong., 2d Sess. 4, reprinted in (1976) U.S. Code Cong. & Ad. News p. 5912.
 
 
 46
 The only defendants exposed to an attorney's fees award in this case are the Mayor of St. Paul and the five council members voting in favor of the ordinance. These public officials approved the ordinance after they conducted a series of public hearings and after securing the legal advice of the City Attorney. In attempting to regulate abortion clinics, these officials were wrestling with an emotional issue in an uncertain and volatile area of the law. The judicial finding that the ordinance is probably unconstitutional is derived from exhibits and affidavits presently appearing in the record. The issues of whether or not the ordinance is actually unconstitutional and whether or not these public officials are subject to monetary damages await a plenary trial and an amplification of the present record. At this embryonic stage of the litigation, it would be inequitable to shackle these officials with a sizable award of attorney's fees. This matter of attorney's fees should be considered by the District Court as the proceedings advance to a more mature stage.
 
 
 47
 We express a caveat on this subject. The prevailing party in a civil rights action is entitled to only "reasonable" attorney's fees. A party is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab. This court will exercise vigilance and pare down needless and unconscionably high legal fees. An award of attorney's fees is compensatory, not punitive, and we will not allow a threat of paying the opposing party's unreasonable legal fees to chill the assertion or defense of seemingly meritorious civil rights claims.
 
 
 48
 The judgment of the District Court is affirmed except for its ruling that the motion for intervention be overruled. Planned Parenthood's request for attorney's fees on this interlocutory appeal is denied.
 
 
 
 [1]
 Planned Parenthood is a non-profit Minnesota corporation set up to provide a number of varied family planning services. Private physicians are retained by Planned Parenthood to provide pregnancy testing and counselling, diagnosis and treatment of venereal disease, contraceptive counselling and diagnosis of cervical and breast cancer for its patients. The charges for these services are not standardized but are based on the patient's ability to pay. Therefore, indigent patients are afforded treatment at Planned Parenthood's facilities at little or no cost
 
 
 [2]
 This action is pursued under 42 U.S.C. §§ 1983, 1985 and the Declaratory Judgment Act, 28 U.S.C. § 2201. Subject matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343
 
 
 [3]
 Defendants also filed a motion to dismiss alleging that Planned Parenthood lacks standing to maintain this action. The District Court overruled the motion to dismiss. It is not disputed that Planned Parenthood was injured by the passage of the ordinance and presents a justiciable case or controversy under Article III of the Constitution. Therefore, its own claims can be asserted and resolved in this litigation. See Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Planned Parenthood also seeks to assert the claims of its prospective patients who were denied the opportunity to avail themselves of the abortion clinic. The extent to which a litigant may assert the constitutional claims of third parties not before the court has not been clearly delineated. See Singleton v. Wulff, 428 U.S. 106, 113-18, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (plurality opinion); id. at 122, 96 S.Ct. 2868 (J. Powell, dissenting). In the context of this case we believe that, as a prudential matter, Planned Parenthood should be allowed to assert the constitutional claims of its patients. There is an intimate relationship between Planned Parenthood and its patients and the right of a pregnant woman to secure an abortion is "inextricably bound up" with the ability of Planned Parenthood to provide one. Singleton v. Wulff, supra at 114-15, 96 S.Ct. 2868. Also, the pregnant woman's ability to assert her own rights is beset with obstacles. She may be dissuaded from litigating because of her desire to protect her privacy; also, the imminence of mootness renders her claims less capable of assertion. Singleton v. Wulff, supra at 117, 96 S.Ct. 2868. We agree with the District Court that Planned Parenthood should be permitted to assert the constitutional claims of its patients. See Runyon v. McCrary, 427 U.S. 160, 175 n. 13, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Friendship Medical Center, Ltd. v. Chicago Board of Health, 505 F.2d 1141, 1145-48 (7th Cir. 1974), cert. denied, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975)
 
 
 [4]
 In Hedberg, a case which is dispositive of the mootness issue, a group of insurers filed an action against one of their terminated insurance agents contending that he had breached a restrictive covenant embodied in the agency contract. The restrictive covenant was effective for one year after the agent's termination. The District Court issued a preliminary injunction to restrain the agent from violating the restrictive covenant for the one-year period. The agent appealed, but by the time this court heard the case, the restrictive covenant and the preliminary injunction had expired by their own terms. Mr. Justice (then circuit judge) Blackmun authored the opinion for this court and concluded that the case was not moot. He noted that the plaintiffs possessed an unresolved claim for damages and that it would be "a waste of time and seemingly futile to dismiss this appeal as moot now only to have the very same issues brought to us once again after damages have been determined * * *." 350 F.2d at 933. Also, the validity of the restrictive covenant was not a moot issue since the question of damages flowed from and was dependent upon it. Therefore, the court reviewed the propriety of the trial judge's issuance of the preliminary injunction. We find the Hedberg rationale controlling in the context of this case
 
 
 [5]
 The District Court found that Planned Parenthood's abortion services would be unique in cost, convenience and patient privacy. Although the number of abortions which would be performed at the facility was not precisely established, the record shows that Planned Parenthood referred 1,040 patients to other facilities for abortions in 1975. It is estimated that approximately 1,000 abortions per year would be performed at the Ford Parkway facility
 
 
 [6]
 The only other medical facility in the City of St. Paul providing facilities for legal abortions is the Ramsey County Hospital
 
 
 [7]
 Nor can defendants justify the ordinance on the basis that the Planned Parenthood abortion clinic would be unsafe. There is no evidence that the clinic would pose an undue risk of harm to the patients. All abortions will be performed by licensed physicians. Defendants argue that they can require first trimester abortion clinics to maintain adequate hospital backup for emergency purposes. However, a comparable feature did not save the Indiana statute from being invalidated in Sendak v. Arnold, supra. Furthermore, defendants have not imposed a similar requirement on other Ford Parkway medical facilities which, according to the District Court, perform medical procedures entailing a risk of serious complications. Imposing more restrictive requirements on abortion clinics than on other clinics is impermissible. Hodgson v. Lawson, supra at 1358
 
 
 [8]
 The application for intervention in this case was filed on July 12, 1976, twelve days after the filing of the complaint. Defendants concede that the motion was timely filed and we agree
 
 
 [9]
 The applicants' contention that the creation of an abortion clinic will lower their property values is not unsubstantiated. The record contains the testimony of a real estate expert who stated that an abortion clinic would lower residential and commercial property values in the immediate area