Mr. Seymour H. Rowland, Jr. City Attorney City of Ocala 502 S.E. Fort King Suite A-4 Ocala, Florida 32671
Dear Mr. Rowland:
This is in response to your request for an opinion on substantially the following questions:
 1. HAS THE STATE OF FLORIDA PREEMPTED THE REGULATION OF ABORTION CLINICS?
 2. IF QUESTION ONE IS ANSWERED IN THE NEGATIVE, DOES THE CITY OF OCALA HAVE THE RIGHT TO BAN ABORTION CLINICS WITHIN THE CITY?
 3. IF QUESTIONS ONE AND TWO ARE BOTH ANSWERED IN THE NEGATIVE, DOES THE CITY HAVE THE AUTHORITY TO RESTRICT THE RIGHT OF AN UNMARRIED MINOR TO SECURE AN ABORTION BY ADOPTING MORE STRINGENT REQUIREMENTS THAN THOSE FOUND IN CHAPTER 390, F.S.?
Chapter 166, F.S., entitled the "Municipal Home Rule Powers Act," grants to municipalities broad home rule powers. Subsection (1) of s. 166.021, F.S., in pertinent part provides that "municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law." Section 166.021(4), F.S., further provides that the provisions of s. 166.021 shall be construed so as to secure for municipalities the broad exercise of home rule powers granted by the Constitution, and to extend to municipalities the exercise of powers not expressly prohibited by the Constitution, general or special law, or in charter counties by the county charter, and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. Thus, municipalities have been delegated the legislative authority to regulate and restrict certain activities and businesses reasonably calculated to protect the public health, safety, and welfare. See, Carter v. Town of Palm Beach,237 So.2d 130 (Fla. 1970); City of Miami Beach v. Texas Co., 194 So. 368
(Fla. 1940); Metropolitan Dade County v. Pierce, 236 So.2d 202 (3 D.C.A.Fla., 1970); and AGO's 79-71, 77-139 and 60-139.
This municipal power to regulate, however, is subject to the state's paramount power to regulate matters in order to protect the public health, safety and welfare. Any attempted regulation by a municipality to the extent such regulation has been preempted by the state or is inconsistent with general law or with regulations adopted by the state would be invalid. See, City of Miami Beach v. Rocio Corp., 404 So.2d 1066, 1070 (3 D.C.A.Fla., 1981), app. dism'd. and pet. for rev. den., 408 So.2d 1092 (Fla. 1981), in which the court held that municipal ordinances are inferior to state law and must fail when conflict arises, stating: "Although legislation may be concurrent, enacted by both state and local governments in areas not preempted by the state, concurrent legislation enacted by municipalities may not conflict with state law. If conflict arises, state law prevails." See also, s.166.221, F.S., providing that "[a] municipality may levy reasonable business, professional, and occupational regulatory fees, commensurate with the cost of the regulatory activity, including consumer protection, on such classes of businesses, professions, and occupations, the regulation of which has not been preempted by the state or a county pursuant to a county charter." (e.s.) Cf., AGO 81-50 concluding that the licensing and regulation of real estate salesmen and brokers is preempted to the state by Ch. 475, F.S., and therefore municipalities are precluded by s.166.221, F.S., from licensing and regulation of the real property activities or services of persons already licensed as real estate salesmen and brokers by the State of Florida. And see, AGO 76-219 (regulatory licensing of insurance agents is preempted to the state under s. 624.401[3], F.S., and municipalities therefore have no power to levy regulatory fees). Thus, if the state has preempted the regulation of abortion clinics, units of local government are precluded from adopting regulatory legislation on this subject matter.
The state's statutory scheme for the regulation of abortion clinics is contained in Ch. 390, F.S. The title to Ch. 78-382, Laws of Florida, codified as Ch. 390, F.S., provides that the law was enacted for purposes of "providing for licensing, inspection, and regulation [of abortion clinics] by the Department of Health and Rehabilitative Services; prescribing license fees; providing for department's powers and rulemaking authority; providing for renewal, denial, suspension and revocation of licenses; providing administrative penalties; prohibiting certain acts and providing penalties. . . ." Section 390.012, F.S., in part, provides that the Department of Health and Rehabilitative Services "shall have the authority to develop and enforce rules for the health, care, and treatment of persons in abortion clinics and for the safe operation of such clinics." The rules of the department must include such matters as minimum standards for the care and treatment of the clinic's clients; availability of aftercare services and emergency medical services administered by a hospital; transportation of patients requiring emergency care; cleanliness of the clinic consistent with surgical procedures; prompt and proper disposal of fetal remains and tissue in the interest of protecting the public health; and the making, protection and preservation of patient records. Id. Section390.014(1), F.S., provides: "No abortion clinic shall operate in this state without a currently effective license issued by the Department of Health and Rehabilitative Services." The license application, inter alia, must contain the location of the clinic and a statement that local zoning ordinances permit such location. Section 390.015, F.S. Cf., Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328 (5th Cir. 1981) (zoning decision that prevents the establishment of an abortion clinic in a particular locality constitutes affirmative governmental interference with a constitutionally protected right and should be subjected to a higher standard of judicial scrutiny); and see, Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, 558 F.2d 861
(8th Cir. 1977) (municipal moratorium on abortion facilities pending further study caused sufficient injury to merit issuance of preliminary injunction); West Side Women's Services, *2525 Inc. v. City of Cleveland, Ohio, 573 F. Supp. 504 (N.D.Ohio. 1983) (municipal ordinance banning abortion services from local retail business districts, unconstitutional). The department has the duty and responsibility to inspect the clinic prior to licensing and to make such additional inspections and investigations to assure compliance with the act. Section 390.019, F.S.
While provisions of Ch. 390, F.S., are silent with respect to the exclusion of local regulation on the subject, a review of the statutes set forth above reveal a comprehensive legislative scheme which, in their operation and effect, seek to control and regulate the operation of abortion clinics in the State of Florida. See e.g., Tribune Company v. Cannella, 458 So.2d 1075 (Fla. 1984) (legislative scheme of the Public Records Act preempted local regulation vis-a-vis delay in the release of public records). The Department of Health and Rehabilitative Services is vested with broad regulatory powers and rulemaking authority to license the operation of abortion clinics. It is clear that local government cannot prohibit what the state permits, nor can local government permit what the state prohibits. See, Rinzler v. Carson,262 So.2d 661 (Fla. 1972); Curtis v. Hutchingson,170 So. 136 (Fla. 1936). The provisions of the state statutes dealing with the regulation of abortion clinics, in totality, appear to evince in my opinion a legislative intent to preempt the subject of regulation and licensing of abortion clinics in the State of Florida, and thus, prohibit additional regulation by local governments in this area.
Therefore, unless and until judicially determined otherwise, I am of the opinion that municipalities have no authority to place any additional regulatory requirements on abortion clinics and are limited to controlling the location of such clinics through reasonable zoning ordinances. Additionally, although the question of local regulation of abortion clinics could conceivably implicate federal constitutional issues involving a woman's constitutional rights, [see, e.g., City of Akron v. Akron Center for Reproductive Health, Inc., 103 S.Ct. 2481 (1983)], the question you pose, whether the state has preempted the field of regulation of abortion clinics so as to preclude local regulation of such clinics, does not raise these broader constitutional issues.
QUESTIONS TWO AND THREE
An affirmative answer to your first question renders a response to your second and third questions unnecessary.
In conclusion, unless and until judicially determined otherwise, I am of the opinion that the state has preempted the field of regulating and licensing abortion clinics, and therefore, municipalities are not authorized to adopt an ordinance regulating (other than reasonable zoning ordinances) or banning such clinics.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General