## AMERICAN HEALTH CARE ASSOCIATION, INC., Plaintiff,

v.

## Joseph A. CALIFANO, Jr., Secretary, United States Department of Health, Education and Welfare, Defendant.

### Civ. A. No. 77–250.

United States District Court, District of Columbia, Civil Division.

Dec. 7, 1977.

---

William A. Geoghegan, Thomas C. Fox, Washington, D.C., for plaintiff.

Karen I. Ward, Asst. U. S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This action constitutes a challenge to the activities of defendant Secretary of Department of Health, Education and Welfare in his imposition of restrictions upon the methods by which states may pay skilled nursing and intermediate care facilities for their services under the Medicaid Act, 42 U.S.C. § 1396 *et seq.* Plaintiff American Health Care Association, a non-profit corporation which seeks to promote high standards of professional care in licensed health care facilities, argues that the Secretary has illegally restricted the ability of states to include profit or similar incentives in its payments to health care institutions for services rendered.

Jurisdiction is vested in this Court pursuant to 5 U.S.C. § 702 and 28 U.S.C. §§ 1331, and 2201–02.* The complaint presents substantive challenges to the Secretary's disapproval of state Medicaid plans which included profits as reasonable costs, as both arbitrary and capricious and in excess of statutory authority; and procedural challenges centered upon the Secretary's failure to ad-

here to provisions of the Administrative Procedure Act (APA) in the establishment of rules related to profit incentives. We will address these challenges consecutively.

A. *Factual Background.* In an effort to supply Congressional guidance for states in their development of mechanisms for reimbursement of skilled and intermediate nursing care facilities for services rendered to Medicaid recipients, Congress in 1972 by Public Law 92–603, § 249(a), amended existing Medicaid legislation and required that states provide for payment to these facilities on a "reasonable cost related basis." 42 U.S.C. § 1396a(a)(13)(E). The section was apparently a result of Congressional displeasure with widespread state endorsement of flat rate payment systems which were perceived as failing to bring about quality care and the efficient, economical provision of such service. *See* Plaintiff's Statement of Material Facts Not in Dispute, ¶ 12. The Court is not oblivious of the widespread complaints, reported in the public press, of the burgeoning costs of Medicaid resulting from lack of proper cost criteria. The amendment has as one of its functions the encouragement of state flexibility in the development of cost related reimbursement schemes. *See* Plaintiff's Statement of Material Facts Not in Dispute, ¶ 14. In an effort to implement these provisions, draft regulations were compiled and circulated for comment in April 1976. The final regulations, issued in July of that year, deleted portions of the draft regulations which had provided for profit and incentive payments to be applied on an inverse percentage basis related to the cost of providing services; in addition, a previously undisclosed preamble provided that "return of proprietary owners' net equity is the only item of profit that may be included as an allowable cost. . . ."[1]

---

* This Court's jurisdiction is not affected by the decision of our Court of Appeals in *Association of Medical Colleges v. Joseph A. Califano,* No. 75–1888 (D.C.Cir. Dec. 1, 1977). We find no statutory provision precluding judicial review of questions arising under the Medicaid Act; such a provision was instrumental to Judge Robinson's determination that this Court was

without jurisdiction to entertain a similar challenge under the Medicare Act. Slip opinion at 8.

1. This profit factor does not otherwise impact on the posture of this case. In the case of *proprietary* owners, the failure to permit such owners a return on net equity would, of course,

The Secretary, through agents, has since July 1976 attempted the difficult task of evaluating state payment programs in an effort to implement the Congressional statute and regulatory provisions. While plaintiff has effectively demonstrated the uncertain and vacillatory record of the Department in its application of the provisions to various state proposals, this Court is only concerned with the present posture of the case.[2] The Secretary maintains that the final regulations do contain a mechanism for profit compensation: consistent with the proposed regulations, a state, in establishing a reasonable cost related rate for compensating providers of services, may endorse a rate of facility-by-facility or class-wide application of sufficient magnitude that providers who minimize expenses may realize a profit in an amount by which those expenses undercut the applicable rate.[3] The Secretary objects to the inclusion of profit as an item of cost in favor of prospective rate setting which he believes establishes a better incentive for the efficient supply of services.[4]

■ B. *Substantive Challenge.* Does the Secretary's limit on the possible methods of profit calculation conflict with the statutory language controlling state reimbursement programs? The existing statutory and regulatory program does allow states to build a profit mechanism into the reimbursement scheme. State flexibility may not be as extensive as plaintiff desires, but we are satisfied that it was the overriding intent of Congress to place restrictions on the recovery of profits, particularly by non-proprietary owners of such facilities. Upon determining that the regulations have been implemented in furtherance of the statutory directive, this Court may not substitute its own judgment or plaintiff's judgment for that of the Secretary in determining which method is preferable; the Court should not intrude into areas of administrative discretion and must protect the Secretary's right to select among effective options. We find the Secretary's regulatory scheme to be a reasonable one: it endorses a profit concept for efficient providers of services while establishing a ceiling upon the total reimbursement. We are unpersuaded by plaintiff's protestations that a reimbursement ceiling contradicts congressional desires to provide states maximum flexibility in establishing reimbursement schemes. Indeed the ceiling is required by the underlying statute which § 249(a) sought to amend. 42 U.S.C. § 1396a(a)(30).

■ Plaintiff's final pleading in this action defenses a possible mootness issue underlying the controversy as currently presented. Insofar as the substantive challenge is concerned, we find plaintiff's arguments lacking in merit. In addition to the challenge to the rulemaking procedures (addressed *infra*), plaintiff complains of being "substantially prejudiced" by the Secretary's promulgation of a vague regulation and improper interpretations of the regulation. *See* Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment (Plaintiff's Reply) at 2. Plaintiff seeks to enjoin the Secretary from making improper interpretations of the reg-

---

implicate the Fifth Amendment. Rather at issue here is profit potential for *non-proprietary* owners, and this Court's discussion will ignore the former category of individuals.

**2.** *See* Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment; *see also Relf v. Weinberger*, 565 F.2d 722 (D.C.Cir., 1977) (struggle to assess current posture of regulations, challenge to which was at base of controversy).

**3.** The Secretary's most recent interpretation allows these rates to be established retrospectively, provided the average payments to all facilities within a class do not exceed amounts which would have been determined under Medicare. *See* Second Supplemental Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (analyzing Michigan plan).

**4.** The Secretary persuasively argues that profit is not an item of cost in the traditional accounting sense, and that a "reasonable cost related rate" by its terms precludes a reimbursement scheme which includes profit. *See* Memorandum of Points and Authorities in Support of Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment at 8, 13.

ulations in the future. Plaintiff's Reply at 9. This Court cannot fashion relief for these grievances. Inconvenience from past interpretations is not a proper subject for judicial relief in this setting and the Secretary's current interpretation seems to be a reasonable one and not arbitrary or capricious. Future injury is not imminent.

C. *Procedural Challenge.* Has the Secretary violated the rulemaking requirements of the Administrative Procedure Act in promulgating the challenged regulations? Plaintiff contends that defendant has violated the informal rulemaking requirements of the APA in his establishment of the regulations at issue in this litigation: (1) the April 13, 1976 Notice of Rulemaking did not satisfy the statutory requirement by indicating that a profit limitation was under consideration and open for comment; (2) interested parties were not permitted to submit written comment regarding the proposed regulations, and (3) the preamble accompanying the final regulation did not satisfy the statutory directive that issued regulations be accompanied by a "concise general statement of their basis and purpose." *See* 5 U.S.C. § 553(b), (c). This Court must decide whether there was a failure to comply with the rulemaking process which would obligate us to invalidate the rules themselves. *See National Welfare Rights Organization v. Mathews,* 174 U.S.App.D.C. 410, 422, 533 F.2d 637, 649 (1976) (regulations invalidated due to shortcomings of rulemaking procedures). Our analysis will be two-pronged. First, was the final regulation a foreseeable outcome of the notice and comment procedure activated by the April 13, 1976 notice; and second, does the final regulation properly guide interested persons in their attempts to comply with the provisions. These inquiries may be distinguished on the basis of the time frame in which they arise: the former inquiry centers upon the preparation and issuance of the regulations, and the latter inquiry centers upon effectuating compliance with the law and regulations. ■ We believe that the differences between the proposed regulation and the final regulation are insufficient to serve as a basis for invalidating the rulemaking procedures. The proposed regulation was sufficient to put affected persons on notice that the rulemaking procedure would impact upon their interests. In addition, the proposal emphasized that the purpose was to reward "efficient management." Proposed Regulation 45 C.F.R. § 250.30(b)(6)(iii)(e). While state flexibility was indeed encouraged by the Notice of Rulemaking, the fact that the final regulation retained some federal control over maximum payments does not strike this Court as an egregious departure from what an interested party such as plaintiff could reasonably have anticipated. *See Ethyl Corp. v. Environmental Protection Agency,* 176 U.S.App.D.C. 373, 420, 541 F.2d 1, 48 (1976).

■ However, we are troubled by the failure of the Secretary to include a statement of basis and purpose in the final regulation. The confusion which state administrators have faced in attempting to satisfy the regulatory requirements clearly illustrates the rationale and need for such a statement. Likewise, judicial review would be facilitated by such a statement of basis and purpose by enabling a court to gain some insight into the administrative thinking which accompanied the issuance of the regulations. *See Automotive Parts & Accessories Association v. Boyd,* 132 U.S.App. D.C. 200, 208, 407 F.2d 330, 338 (1968). This Court does not condone a trial-and-error approach in the implementation of administrative regulations. *See* 2 Davis, *Administrative Law Treatise* § 16.05 at 444 (1958 ed.) (purpose statement, *inter alia,* prevents agencies from overstepping jurisdiction).

For these reasons, this Court will direct that the Secretary, within sixty (60) days, issue a statement of basis and purpose which statement shall serve to advise interested parties of the intended operation of the regulation. With this limited exception, we shall grant defendant's motion for summary judgment and deny plaintiff's counter motion.