**MINNESOTA ASSOCIATION OF HEALTH CARE FACILITIES, INC., a Minnesota Nonprofit Corporation, Sunshine Villa, Inc., a Minnesota Corporation, Augustana Lutheran Homes, Inc., a Minnesota Nonprofit Corporation, Red Wing Nursing Home of TLC Nursing Centers, Inc., a Minnesota Corporation, and Mala Strana Nursing Home of New Prague, a Minnesota Partnership, and Texa-Tonka Nursing Home, Inc., and Excelsior Nursing Home of Iroquois-Excelsior, Inc., a Minnesota Corporation and Valleyview Nursing Home, Inc., a Minnesota Nonprofit Corporation, Appellants,**

v.

**MINNESOTA DEPARTMENT OF PUBIC WELFARE, Edward J. Dirkswager, Jr., Acting Commissioner of the Minnesota Department of Public Welfare, and Nursing Home Residents' Advisory Council, Appellees.**

No. 78–1845.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1979.

Decided July 6, 1979.

Rehearing and Rehearing En Banc Denied July 30, 1979.

---

John M. Broeker, of Broeker, Hartfeldt, Hedges & Grant, Minneapolis, Minn., for appellants; Allene D. Evans, Minneapolis, Minn., on brief.

William P. Marshall, Special Asst. Atty. Gen., St. Paul, Minn., for appellee, Minnesota Dept. of Welfare; Warren R. Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Paul G. Zerby, Asst. Atty. Gen., St. Paul, Minn., on brief.

Laurie N. Davison, Legal Aid Society of Minneapolis, Inc., Minneapolis, Minn., for appellee, Nursing Home Residents'.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON,* Chief Judge.

---

* The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

2. *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Public Welfare,* No. Civ. 3-77-467 (D.Minn. Oct. 20, 1978) (order granting motions to intervene, denying motions for preliminary injunction).

McMILLIAN, Circuit Judge.

Excelsior Nursing Home of Iroquois-Excelsior, Inc., a Minnesota corporation (hereinafter Excelsior), and Valleyview Nursing Home, Inc., a Minnesota nonprofit corporation, appeal from an order entered in the district court[1] for the District of Minnesota denying them preliminary injunctive relief.[2] For the reasons discussed below, we affirm the judgment of the district court.

This action was originally brought by the Minnesota Association of Health Care Facilities, Inc. (hereinafter MAHCF) and four member nursing homes[3] to challenge the validity of *Regulations of the Minnesota Department of Public Welfare for Determining Welfare Per Diem Rates for Nursing Home Providers under the Title XIX Medical Assistance Program* (hereinafter DPW Rule 49) and a state statute, Minn. Stat.Ann. § 256B.48(1)(a) (West Supp.1978). The state defendants were joined by the Nursing Home Residents' Advisory Council (hereinafter NHRAC), a public interest organization with both private and Medicaid nursing home residents among its members. After denial of cross-motions for summary judgment by all parties in this matter and its companion case, *Minnesota Hospital Association v. Minnesota Department of Public Welfare,* No. Civ. 3-78-88 (D.Minn.), MAHCF, the four original nursing homes, intervenor Texa-Tonka, and two new applicants for intervention (appellants herein) sought a preliminary injunction against enforcement of the state statute pending judicial determination of its validity. The district court granted appellants' motions to intervene but denied the motion for preliminary injunctive relief; this appeal followed.

3. Sunshine Villa, Inc.; Augustana Lutheran Homes, Inc.; Red Wing Nursing Home of TLC Nursing Centers, Inc.; Mala Strana Nursing Home of New Prague. Texa-Tonka Nursing Home, Inc. (hereinafter Texa-Tonka), a non-MAHCP member, was permitted to intervene. Excelsior, Valleyview and Texa-Tonka appealed from the denial of injunctive relief; however, Texa-Tonka's appeal was subsequently dismissed without prejudice upon its own motion.

For reversal appellants argue that the district court erred in failing to grant them injunctive relief. Appellants argue that they made a clear showing as to the invalidity of the statute [4] and the nature of the serious and irreparable harm they would suffer if enforcement of the statute was not enjoined, especially in conjunction with the allegedly inadequate rate of reimbursement established under DPW Rule 49.[5] In particular appellants submit that enforcement of the statute has caused serious financial problems which jeopardize the quality of health care and medical services of Medicaid residents as well as the continued business operation of many of the state's nursing homes, the vast majority of which accept Medicaid recipients.

As noted by the district court in its memorandum and order, this Circuit has apparently adopted two alternative preliminary injunction tests: the familiar traditional test, *e.g., Minnesota Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973), and the test formulated by the Second Circuit, *e.g., Gresham v. Chambers*, 501 F.2d 687, 691 (2d Cir. 1974); *accord, William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975). *See Dakota Wholesale Liquor, Inc. v. Minnesota*, 584 F.2d 847, 849 & n. 4 (8th Cir. 1978) (per curiam); *Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978). The traditional test requires the moving party to show substantial probability of success on the merits and the possibility of irreparable injury if injunctive relief is denied. *Fennell v. Butler, supra*, 570 F.2d at 264. Other factors which may be considered include possible harm to other interested parties and the public interest. *Minnesota Bearing Co. v. White Motor Corp., supra*, 470 F.2d at 1326 (citation omitted). Under the slightly different Second Circuit test, the moving party must show there are sufficiently serious questions going to the merits to make the questions a fair basis for litigation and a balance of the hardships tipping decidedly in the party's favor. *Id.* Under both tests the district court must examine the merits and the nature of the possible injury suffered by either or both of the parties. "We accord the district court considerable discretion in weighing the equities of the case and determining whether or not a preliminary injunction should issue." *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 866 (8th Cir. 1977), *citing American Train Dispatchers Ass'n v. Burlington Northern, Inc.*, 551 F.2d 749, 751 (8th Cir. 1977). On appeal our scope of review is limited to the question whether the issuance or denial of injunctive relief, in light of the applicable standard, constituted an abuse of discretion. *E.g., Dakota Wholesale Liquor, Inc. v. Minnesota, supra*, 584 F.2d at 849 (citations omitted); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action, supra*, 558 F.2d at 866 (citations omitted).

After a careful review of the pleadings, affidavits and depositions filed in this case, we are unable to find that the district court abused its discretion in denying preliminary injunctive relief.

First, we agree with the district court that it appears appellants' likelihood of success on the merits is slim.[6] Although we

---

4. Appellants argue that the statute is invalid because the State Department of Public Welfare failed to obtain the necessary prior federal approval of an amendment to the state's Medicaid plan, the statute imposes an illegal additional condition of Medicaid participation upon providers, the statute unconstitutionally impairs contracts, the statute violates equal protection and due process, and the statute is not saved from constitutional infirmity by the voluntary nature of provider participation in Medicaid programs.

5. Appellants argue that the reimbursements rates as established pursuant to DPW Rule 49 are invalid because such rates do not pay providers of skilled nursing and intermediate care services on a "reasonable cost-related basis." 42 U.S.C. § 1396a(13)(E).

6. Appellants, as Medicaid providers, do have standing to challenge alleged violations of the Social Security Laws. *E.g., Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Pharmacists Society of Milwaukee County, Inc. v. Department of Health & Social Services*, 79 F.R.D. 405 (E.D.Wis.1978); *Na-*

express no opinion as to the ultimate outcome of this case, we note that challenges similar to appellants' attack upon the adequacy of the reimbursement rates established pursuant to DPW Rule 49 have been unsuccessful in other jurisdictions, including Minnesota. *See Koronis Manor Nursing Home v. Department of Public Welfare,* 311 Minn. 375, 249 N.W.2d 448 (1976); *LaCrescent Constant Care Center, Inc. v. State,* 301 Minn. 229, 222 N.W.2d 87 (1974) (en banc); *accord, Briarcliff Haven, Inc. v. Department of Human Resources,* 403 F.Supp. 1355 (N.D.Ga.1975); *cf. Massachusetts General Hospital v. Weiner,* 569 F.2d 1156 (1st Cir. 1978) (hospital providers); *American Health Care Ass'n Inc. v. Califano,* 443 F.Supp. 612 (D.D.C.1977) (organization representing all licensed health care institutions). A major problem confronting appellants is the statutory language itself. In 1972 Congress amended the existing Medicaid legislation [7] to require the states to provide payment to skilled and intermediate nursing care facilities for services rendered to Medicaid recipients on a "reasonable cost-related basis." 42 U.S.C. § 1396(a)(13)(E). This standard does not necessarily require the state to reimburse the provider (the nursing home) for "actual reasonable costs of care" as argued by appellants. Appellants' Brief at 15. *Cf. Massachusetts General Hospital v. Weiner, supra,* 569 F.2d at 1161 (court draws a distinction between a hospital's "actual costs" of

treating a Medicaid patient and the "reasonable cost" requirement of 42 U.S.C. § 1396a(a)(13)(D). We further note that the Minnesota state plan has been approved by HEW.

Thus, appellants are entitled to a level of reimbursement established on a "reasonable cost-related basis." Whether or not DPW Rule 49 provides this level of reimbursement in accordance with the applicable federal statute and regulations, *see* 42 C.F.R. § 447.272–.311 (1978), is, of course, the question at the heart of the underlying litigation. We note, however, that for the purposes of this appeal the absence of a fixed rate of reimbursement weakens appellants' financial arguments. "The contractual relationship between nursing homes and the state is unique in that no reimbursement figure, be it a fixed per diem rate or schedule of maximum fees, is provided in the contract [or provider agreement]." *LaCrescent Constant Care Center, Inc. v. State, supra,* 222 N.W.2d at 91. Furthermore, appellants' argument is undermined by another condition of provider participation: providers are required to agree to accept, as payment in full, the amounts paid by the state agency. 42 C.F.R. § 447.15 (1978).

The structure and operation of the Medicaid program further diminishes the force of appellants' attack upon the equalization of rates [8] and payback [9] provisions. Participa-

---

*tional Union of Hospital & Health Care Employees v. Carey,* 557 F.2d 278 (2d Cir. 1977).

7. The existing legislation provided for payment "not in excess of reasonable charges consistent with efficiency, economy and quality of care." 42 U.S.C. § 1396a(a)(30). "The [1972 amendment] section was apparently a result of Congressional displeasure with widespread state endorsement of flat rate payment systems which were perceived as failing to bring about quality care and the efficient, economical provision of such service." *American Health Care Ass'n v. Califano, supra,* 443 F.Supp. at 614.

8. Minn.Stat.Ann. § 256B.48(1)(a) provides in part:

Effective July 1, 1978, *no nursing home shall be eligible for medical assistance if it charges nonmedical assistance recipients [residents] rates for similar services which exceed those which are approved by the state agency for*

*medical assistance recipients*; provided, however, that the nursing home may (1) charge nonmedical assistance residents a higher rate for a private room, and (2) charge for special services which are not included in the daily rate if medical assistance patients are charged separately at the same rate for the same services in addition to the daily rate paid by the state agency; . . . (Emphasis added).

9. Minn.Stat.Ann. § 256B.48(1)(a) provides in part:

No nursing home shall be eligible to receive medical assistance payments unless it agrees in writing that it will refrain from:

(a) Charging nonmedical assistance residents rates for similar services which exceed by more than ten percent those rates which are approved by the state agency for medical assistance recipients. For nursing homes

tion by a nursing home as a provider of health care services to Medicaid recipients is voluntary. If appellants find that the reimbursement rates are insufficient, then they may either make their homes more efficient and economical or terminate their relationship with Medicaid and no longer accept Medicaid recipients as residents. *See LaCrescent Constant Care Center, Inc. v. State, supra,* 222 N.W.2d at 91; *cf. National Union of Hospital & Health Care Employees v. Carey, supra,* 557 F.2d at 282 (in context of labor law question). Moreover, "[a] nursing facility's [economic] 'need' for patients has nothing to do with the statutory benefits structure. The facility's need is incidental. That a particular nursing facility cannot survive without Medicaid participation was certainly not Congress' foremost consideration in its creation of the Medicaid program." *Case v. Weinberger,* 523 F.2d 602, 607 & n. 11 (2d Cir. 1975) (footnote omitted).

The equalization of rates provision represents a controversial attempt by the state to end the "subsidy" of Medicaid nursing home residents by private residents. Such a provision would appear to be consistent with the intent of Congress and the general reimbursement regulations that "the costs of services of individuals covered by the [Medicaid] program will not be borne by individuals not covered, and the costs of services of individuals not covered will not be borne by the program." S.Rep.No. 404, 89th Cong., 1st Sess., *reprinted in* [1965] U.S.Code Cong. & Admin.News, pp. 1943, 1976. *See also* 42 C.F.R. § 405.402(a) (1978). We are not persuaded by appellants' allegations of impairment of contract obligations in violation of the contract clause. *See Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). Furthermore, we are not persuaded that appellants had any such right, *as Med-*

*icaid providers,* to charge private patients higher rates in order to recoup the losses sustained as a result of the allegedly inadequate reimbursement rates paid by the state for Medicaid patients.

Nor are we persuaded the payback provision is invalid. An analogous "retroactive corrective adjustment" in the Medicare program, 42 U.S.C. § 1395 *et seq.,* to recapture accelerated depreciation costs has met with judicial approval. *See Summit Nursing Home, Inc. v. United States,* 572 F.2d 737, 741 (Ct.Cl.1978); *Adams Nursing Home, Inc. v. Mathews,* 548 F.2d 1077 (1st Cir. 1977); *Springdale Convalescent Center v. Mathews,* 545 F.2d 943 (5th Cir. 1977); *Hazelwood Chronic & Convalescent Hospital, Inc. v. Weinberger,* 543 F.2d 703 (9th Cir. 1976), *vacated and remanded on other grounds,* 430 U.S. 952, 97 S.Ct. 1595, 51 L.Ed.2d 801 (1977).

Finally, we note that the state enforcement policy and the speculative nature of the threatened harm support the denial of injunctive relief. The state has refused to place or approve the placement of Medicaid recipients after July 1, 1978, in nursing homes which have not signed the "Supplemental Provider Agreement." The state continues to pay for those Medicaid recipients admitted prior to July 1, 1978, as well as for those private patients admitted by that date who have subsequently become eligible for Medicaid. The state has not attempted to transfer Medicaid recipients from noncomplying to complying nursing homes. The state has permitted nursing homes to charge higher rates to private patients if the difference is held in escrow, pending judicial resolution of the validity of the statute. Moreover, it is impossible at this time to determine with any accuracy the extent to which the financial problems facing appellants can be attributed to the

charging nonmedical assistance residents rates less than ten percent more than those rates which are approved by the state agency for medical assistance recipients, the maximum differential in rates between nonmedical assistance residents and medical assistance recipients shall not exceed that differential which was in effect on April 13, 1976. *If*

*a nursing home has exceeded this differential since April 13, 1976, it shall return the amount collected in excess of the allowable differential stated by this subdivision to the nonmedical assistance resident, or that person's representative, by July 1, 1977. . . .* (Emphasis added).

equalization of rates and payback provisions or the alleged fundamental inadequacy of the reimbursement rates.

Accordingly, the judgment of the district court is affirmed. To the extent this opinion addressed the merits, such discussion is limited to the resolution of this appeal only. The court expresses no opinion as to the ultimate disposition of the questions presented.